UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| CARLAN WAYNE WELLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 4:14-CV-16-RLM-JEM |
| | ) |
| CAROLYN W. COLVIN, | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

OPINION and ORDER

Plaintiff Carlan Wayne Wells seeks judicial review of the Commissioner of Social Security's final decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423, *et seq.*, for the time period of January 1, 2007 through April 7, 2011. The court has jurisdiction over this action under 42 U.S.C. § 405(g). For the reasons that follow, the court affirms the ALJ's denial of benefits.

I. BACKGROUND

Mr. Wells filed his initial application for benefits on April 18, 2011, alleging an onset date of January 1, 2007 for borderline intellectual functioning and an onset date of April 7, 2011 for borderline intellectual functioning and diabetes. His application was denied initially and upon reconsideration. An administrative hearing was held in November 2012, at which Mr. Wells was represented by counsel. At the hearing, the administrative law judge heard

testimony from Mr. Wells and vocational expert Leonard Fisher. In the written opinion that followed, the ALJ found that Mr. Wells's impairments were severe but didn't meet or medically equal the severity of one of the impairments, specifically Listing 12.05, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded, however, that Mr. Wells became disabled on April 7, 2011 when he was diagnosed with diabetes. The ALJ determined that before that date, Mr. Wells could perform a full range of work at all exertional levels but was limited to simple, routine, repetitive tasks. This included his past work as a tree trimmer helper. The ALJ found that after April 7, Mr. Wells could only perform the exertional demands of less than medium work, again with the restrictions that the work be limited to simple, routine, repetitive tasks. The reduction in exertional demand capability prevented Mr. Wells from performing his past work. Finally, the ALJ concluded Mr. Wells's work skills weren't transferable to other occupations and no jobs existed in significant numbers in the national economy that Mr. Wells could perform. *See* 20 C.F.R. § 416.920(f) (evaluation of disability of adults, in general). So, the ALJ determined Mr. Wells was disabled as of April 7, 2011, but not before then. The Appeals Council denied review of the ALJ's decision, making the decision the Commissioner's final decision. 20 C.F.R. § 416.1481.

## II. STANDARD OF REVIEW

The court must affirm the Commissioner's determination if it is supported by substantial evidence, 42 U.S.C. § 405(g); Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011), which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); *see also* Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). The court can't re-weigh the evidence, make independent findings of fact, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009), but in reviewing the ALJ's conclusions, "[t]he court will conduct a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). The ALJ isn't required "to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010).

## III. LISTING 12.05 – INTELLECTUAL DISABILITY

Mr. Wells argues that substantial evidence doesn't support the ALJ's conclusion that his borderline intellectual functioning didn't meet or equal Listing 12.05. He challenges the ALJ's determination for the time period before April 7, 2011, when his borderline intellectual functioning was his only impairment; he doesn't challenge the ALJ's determination that he was disabled after his diabetes diagnosis.

A claimant meets or equals the requirements of Intellectual Disability as defined in Listing 12.05 if the claimant's impairment satisfies the diagnostic description of intellectual disability in the introductory paragraph to Listing 12.05 and one of the four sets of severity criteria found in A, B, C, and D. 12.00 Mental Disorders, 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing [12.05]."); *see also* Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001). Listing 12.05's introductory paragraph diagnostic description reads as follows:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

12.05 Intellectual disability, 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ concluded that Mr. Wells's borderline intellectual functioning didn't meet or

equal Listing 12.05 under any of the four sets of criteria. Mr. Wells says he met the criteria of B: "A valid verbal, performance, or full scale IQ of 59 or less." 12.05B, 20 C.F.R. Pt. 404, Subpt. P, App. 1. The claimant has the burden of proving that his condition meets or equals a listed impairment. Maggard v. Apfel, 167 F.3d 376, 380 (7th Cir. 1999).

Mr. Wells says he can't read or write and he only attended school through the seventh grade. He emphasizes that the consultative psychologist, Dr. John Heroldt, determined he had a full scale IQ score of 58 and couldn't handle money. He argues that an IQ score of 58 meets Listing 12.05B. He says he hasn't had full time work since 2008. Mr. Wells concludes that he wasn't able to engage in substantial gainful activity before April 7, 2011 because he had an impairment that met a listing – an IQ score of 58 – so he was disabled.

The Commissioner says the lack of evidence that Mr. Wells's subaverage general intellectual functioning (i.e., his full scale IQ score of 58) manifested before the age of twenty-two supports the ALJ's conclusion that Mr. Wells's condition didn't meet the requirements of Listing 12.05's introductory paragraph. The court agrees. The ALJ noted that no evidence supports Mr. Wells's testimony that he received special education services in school. The record reflects, and the ALJ discussed, that Mr. Wells attended school through the seventh grade. Mr. Wells left school to go to work and not for any apparent academic related reason. The one educational record for Mr. Wells that Rita Moore, the Special Program Director at Coloma Community Schools, was able

to find was a report card for the second semester of the 1975-1976 school year. It showed satisfactory grades (mostly Cs, one B, maybe one D[1]) in all classes except physical education, in which Mr. Wells received a failing grade.[2] A December 1, 2008 handwritten note from Ms. Moore says, "This is the only info on file[.] He was in the District from 75-77 for elementary + middle school. No indication SE services were in place." In late 2008, Mr. Wells was examined by Dr. Heroldt, who determined that Mr. Wells had a verbal IQ score of 62, a performance IQ score of 59, and a full scale IQ score of 58. As Mr. Wells points out, according to Dr. Heroldt, a full scale IQ score of 58 falls in the 0.3 percentile for adults Mr. Wells's age. Dr. Heroldt concluded that Mr. Wells's intellectual functioning was significantly subaverage. The ALJ found that Mr. Wells's grades weren't the "best," but they suggested that he functioned above the lowest 0.3 percentile of the population. The ALJ concluded that Mr. Wells's report card suggested that he had greater intellectual functioning as a child than he did when, at the age of forty-four, he was examined by Dr. Heroldt. The ALJ acknowledged that Mr. Wells had a full scale IQ score of 58 in 2008 and that the score was subaverage. He concluded, however, that Mr. Wells's subaverage general intellectual functioning, as evidenced by the IQ score,

---

[1] The font used in the document makes it difficult to read.

[2] The Commissioner says the ALJ's opinion mistakenly identifies special education to be the class in which Mr. Wells received an F. According to the record, that grade was received in physical education ("BOYS PE"). The error was likely typographical and is immaterial; no matter the class, the ALJ mentioned the failing grade to show that it was the only one on the report card.

didn't manifest before Mr. Wells was twenty-two years old, as the introductory paragraph of Listing 12.05 requires. Mr. Wells doesn't point to any evidence to contradict this conclusion, and the ALJ based his decision on the hard copy of a report card for Mr. Wells that has remarkably survived for about forty years and the school's lack of any record that Mr. Wells received special education services. Substantial evidence supports the ALJ's conclusion.

The Commissioner also says Mr. Wells's long work history supports the ALJ's conclusion that Mr. Wells's adaptive functioning deficits didn't meet the requirements of Listing 12.05's introductory paragraph. That is a reasonable finding based on this record. Consultative examiner Dr. Heroldt found that Mr. Wells's adaptive functioning was deficient in a number of areas, including academics, finances, literacy, and socialization. The ALJ noted that Dr. Heroldt mentioned these deficits, but determined that Mr. Wells had learned to compensate for his impairment. Specifically, the ALJ referenced Mr. Wells's ability to manage his personal needs without difficulty and his long, unskilled work history (he left school after the seventh grade in order to work). The ALJ noted that Mr. Wells was illiterate and couldn't manage a checkbook, but his wife took care of things for him. The ALJ remarked that although Mr. Wells needed the driver's test read to him, he passed the test, received his driver's license, and drives. The only evidence Mr. Wells cited to support his deficient adaptive functioning was his inability to perform substantial gainful activity beginning sometime in 2008. He doesn't explain how his impairment caused

this change in his employment status. The evidence discussed by the ALJ, on the other hand, shows that Mr. Wells had a history of adapting quite well to his functioning deficits. The ALJ's conclusion is supported by substantial evidence.

Mr. Wells relies exclusively on his full scale IQ score of 58, found in Dr. Heroldt's 2008 report, to argue that he met Listing 12.05. Neither the ALJ nor the Commissioner disputed that Mr. Wells's full scale IQ score of 58 met the severity criteria of B in Listing 12.05. But to meet Listing 12.05, the claimant's impairment must satisfy one of the four sets of criteria *and* the diagnostic description of intellectual disability found in the introductory paragraph of the listing. The ALJ concluded Mr. Wells's impairment wasn't consistent with the diagnostic description because his subaverage intellectual functioning didn't manifest before the age of twenty-two and he didn't have deficient adaptive functioning as contemplated by the listing. Further, the ALJ's conclusions, regarding Mr. Wells's intellectual functioning as a child and his compensation for his impairment, are supported by substantial evidence in the record, as discussed in the ALJ's decision.[3]

---

[3] The Commissioner also emphasizes that the two state agency psychologists who reviewed the record and the consultative examiner's report concluded that Mr. Wells didn't have a listing level impairment and was capable of simple, unskilled work. Although true, the ALJ discussed the psychological consultants' opinions at a later step in the disability review process and didn't rely on this evidence when he evaluated whether Mr. Wells's impairment met or equaled a listed impairment. *C.f.* Parker v. Astrue, 597 F.3d 920, 925 (7th Cir. 2010), as amended on reh'g in part (May 12, 2010) (Commissioner may not rely on evidence not mentioned by the ALJ). The court needn't consider whether the Commissioner's reliance on this evidence violates the Chenery doctrine because the other evidence cited by the ALJ in the specific step at issue was sufficient.

## IV. Conclusion

The court finds the ALJ's conclusion that Mr. Wells wasn't disabled based on his borderline intellectual functioning alone is supported by substantial evidence. Accordingly, the court DECLINES Mr. Wells's request to reverse the ALJ's decision or remand this action for further findings and AFFIRMS the ALJ's denial of benefits for the time period prior to April 7, 2011.

SO ORDERED.

ENTERED:  March 25, 2015

/s/ Robert L. Miller, Jr.
Judge
United States District Court